The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 13, 2019

## 2019COA88

**No. 18CA0748, *Ryser v. Shelter Mutual Insurance* — Insurance
— Motor Vehicles — Uninured/Underinsured; Workers'
Compensation — Coverage and Liability**

In this uninsured/underinsured motorist (UM/UIM) benefits

case, a division of the court of appeals concludes that the

exclusivity provision of the Workers' Compensation Act of Colorado,

section 8-41-102, C.R.S. 2018, and the related co-employee

immunity rule, bar a person who was injured in the course and

scope of employment by a co-employee's negligence in driving a car

from receiving UM/UIM benefits under an insurance policy

maintained by another co-employee who owned the car.

COLORADO COURT OF APPEALS    **2019COA88**

Court of Appeals No. 18CA0748
City and County of Denver District Court No. 17CV33797
Honorable Robert L. McGahey, Jr., Judge

Kent Ryser,

Plaintiff-Appellant,

v.

Shelter Mutual Insurance Company,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE WEBB
Furman and Márquez*, JJ., concur

Announced June 13, 2019

Killian Davis Richter & Mayle, PC, Nicholas W. Mayle, Damon Davis, Grand Junction, Colorado, for Plaintiff-Appellant

Morgan Rider Riter Tsai, P.C., Sophia H. Tsai, Kelly L. Kafer, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    In this uninsured/underinsured motorist (UM/UIM) benefits case, plaintiff, Kent Ryser, appeals the summary judgment entered in favor of defendant, Shelter Mutual Insurance Company, based on the exclusivity provision of the Workers' Compensation Act of Colorado (WCA), section 8-41-102, C.R.S. 2018, and the related co-employee immunity rule.  The case requires us to decide whether this immunity bars a person who was injured in the course and scope of employment by a co-employee's negligence in driving a car from receiving UM/UIM benefits under an insurance policy maintained by another co-employee who owned the car.[1]  Because of the tortfeasor's coworker immunity, we conclude that Ryser cannot satisfy the UM/UIM statutory requirement of being "legally entitled to recover."  On this basis, we affirm the summary judgment.

---

[1] Answering this question fills a gap between cases in which divisions of this court have addressed the interplay between UM/UIM coverage and tortfeasor immunity in different contexts, such as where the insurance policy belonged to the claimant and where immunity arose under the Colorado Governmental Immunity Act (CGIA) rather than under the WCA.

## I. Undisputed Facts and Procedural Background

¶ 2      Ryser suffered serious injuries in a one-car accident. Sherri Babion owned the car. Linda Forster was driving, with Babion's permission. Ryser was a passenger, also with her permission. When the accident occurred, all three of them were Walmart employees acting in the course and scope of their employment. According to Ryser, Forster's negligence caused his injuries.

¶ 3      Babion maintained an auto insurance policy written by Shelter. The policy provided UM/UIM coverage. Because Forster was driving with Babion's consent and Ryser was a permitted passenger, they were both insured under the policy. But the policy's UM/UIM coverage applied only where "the owner or operator of an uninsured/underinsured motor vehicle is legally obligated to pay damages." As well, the policy excluded from the definition of uninsured/underinsured motor vehicle "[t]he described auto," i.e., Babion's car.

¶ 4      Ryser received workers' compensation benefits. He also obtained UM/UIM benefits under his own auto policy on the basis that the co-employee immunity rule rendered Forster an uninsured motorist. Still, he claimed UM/UIM benefits from Shelter to the

2

extent that Babion's UM/UIM coverage had a higher limit than his own policy.

¶ 5     When Shelter rejected the claim, Ryser brought this action for UM/UIM benefits.  He also raised statutory bad faith and unreasonable delay and denial of benefits claims, along with a common law bad faith claim.

¶ 6     Shelter moved for summary judgment.  It argued that Forster's co-employee immunity precluded the claim, as did the exclusion of Babion's car from UM/UIM coverage.  For purposes of summary judgment, it did not contest that Ryser had been injured or that Forster's negligence had caused his injuries.

¶ 7     Ryser opposed Shelter's motion on the described auto exclusion and filed a cross-motion for partial summary judgment on the co-employee immunity question.  He did not assert any negligence as to Babion.

¶ 8     Neither party opposed the other's motion based on disputed issues of material fact.  Nor was the co-employee immunity of Forster disputed.

¶ 9     In a written order, the trial court ruled for Shelter and against Ryser based on co-employee immunity, thus ending the case.  The

court did not address the described auto exclusion. On appeal, Shelter concedes preservation.

## II. Standard of Review

¶ 10    Summary judgment is reviewed de novo, applying the same standard as the trial court. *City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 9. It is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002). The opposing party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini*, 42 P.3d at 632.

¶ 11    Statutory interpretation is a question of law that is also reviewed de novo. *Cont'l Divide Ins. Co. v. Dickinson*, 179 P.3d 202, 204 (Colo. App. 2007). So is the interpretation of an insurance policy. *Smith v. State Farm Mut. Auto. Ins. Co.*, 2017 COA 6, ¶ 5.

¶ 12    Although earlier decisions from divisions of this court are not binding on another division, "the later division should give the prior

decision some deference." *People v. Oliver*, 2018 COA 146, ¶ 24 n.1 (quoting *People v. Bondsteel*, 2015 COA 165, ¶ 14).

## III. Law

### A. Statutes

¶ 13 In Colorado, statutes regulate UM/UIM coverage. Under section 10-4-609(1)(a), C.R.S. 2018, auto insurers must offer UM/UIM coverage with all liability policies covering the same class of persons who are included in the liability provisions. UM/UIM benefits are available only to persons who are "legally entitled to recover." *Id.* This phrase is not defined. Coverage extends to permissive users. § 10-4-620, C.R.S. 2018.

¶ 14 Nor do the statutes define "uninsured motorist" or "uninsured automobile." An "underinsured" motor vehicle is defined as "a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident." § 10-4-609(4). Under that section, "[u]ninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled *to collect* from the owner or driver of an underinsured motor vehicle." *Id.* (emphasis added). But the phrase "legally entitled to collect" is also undefined.

5

## B. Case Law

¶ 15    The parties primarily focus on three decisions by divisions of this court: *Borjas v. State Farm Mutual Automobile Insurance Co.*, 33 P.3d 1265 (Colo. App. 2001); *Dickinson*, 179 P.3d 202; and *American Family Mutual Insurance Co. v. Ashour*, 2017 COA 67. To a lesser extent, they point to *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92 (Colo. 1995). Unsurprisingly, they read these cases differently. And in any event, at most these cases provide only background.

### 1. *Borjas*

¶ 16    The plaintiff sought UM/UIM benefits under her personal auto policy for injuries suffered in a collision with a car driven by a police officer. The officer was immune under the CGIA. After examining the policies underlying UM/UIM coverage and governmental immunity, the division allowed recovery. In doing so, it explained that "legally entitled to recover" under section 10-4-609(1)(a) "means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages." *Borjas*, 33 P.3d at 1269.

## 2. *Dickinson*

¶ 17    The plaintiff, an independent contractor, sustained an injury caused by a co-employee's negligent operation of a motor vehicle. Because he had elected not to be covered by the employer's workers' compensation policy and had not obtained his own coverage, the WCA limited the liability of the employer and the co-employee to a total of $15,000.  § 8-41-401(3), C.R.S. 2018.  After having been paid that amount, he sought UM/UIM benefits from the employer's insurer.

¶ 18    The division rejected the claim.  It held that "[a]llowing an independent contractor, who like Dickinson had not procured workers' compensation insurance, to recover damages in excess of $15,000 through the employer's UM/UIM insurance for injuries sustained in a work-related accident would undercut the[] policies [of the WCA]." *Dickinson*, 179 P.3d at 207.  In doing so, the division declined to follow *Borjas* and aligned with what it described as the "majority of jurisdictions that have addressed this issue," holding that "an insured is not 'legally entitled to recover' under the uninsured motorist provisions of an [employer's] insurance policy if the exclusivity provisions of the workers' compensation statute

7

would bar an action against the tortfeasor." *Id.* at 204 (citation omitted).

### 3. *Ashour*

¶ 19    The plaintiff was injured at work in a motor vehicle accident caused by a co-employee's negligence. After having received workers' compensation benefits, he sought UM/UIM benefits under his own auto insurance policy. The division held that this claim was "not barred by the exclusivity provisions of the [WCA], or by the 'legally entitled to recover' language" of section 10-4-609. *Ashour*, ¶ 73. As to this phrase, the division followed *Borjas* and held that it means "the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages." *Id.* at ¶ 63 (quoting *Borjas*, 33 P.3d at 1269). So, it concluded, "allowing [the plaintiff] to claim benefits from his own insurance carrier would not in any way affect the immunity provided to his employer and co-employee by the [WCA]." *Id.* at ¶ 71.

### 4. *McMichael*

¶ 20    The plaintiff, an employee, sustained injuries while working near his employer's truck and sought UM/UIM benefits under the

employer's insurance policy.  The supreme court addressed whether the plaintiff was covered, although he had left the truck before being injured.  Unlike *Borjas*, *Dickinson*, and *Ashour*, this case did not involve WCA immunity because the plaintiff was struck by a third-party tortfeasor.

¶ 21    The court addressed the WCA only to the extent of noting that "[t]he Workers' Compensation statute does not bar McMichael from bringing a tort action against the driver who caused the accident." *McMichael*, 906 P.2d at 100 n.7.  It held that "insurers must provide UM/UIM coverage for the protection of persons insured under the liability policy that the insurer is issuing." *Id.* at 97.  It also held that an exclusion of employer's liability for workers' compensation benefits did not limit UM/UIM coverage.

¶ 22    In sum, whether an employee injured in an auto accident caused by a co-employee's negligence while in the course and scope of employment is "legally entitled to recover" — a condition precedent to obtaining UM/UIM benefits under another co-employee's auto insurance policy — remains unresolved.[2]

_____

[2] Of course, the General Assembly could fill this gap, but it has not done so.

## IV. Ryser Is Not Legally Entitled to Recover

¶ 23    Relying on *Borjas* and *Ashour*, Ryser contends he is entitled to UM/UIM benefits under Babion's policy because "he can prove [Forster] was at fault for the collision and that he suffered injuries therefrom." Recall that, for summary judgment purposes, neither fault nor damages are disputed. So, resolving this contention begins with determining the meaning of "legally entitled to recover" under section 10-4-609.[3] After doing this, we conclude that Ryser is not entitled to UM/UIM benefits under Babion's insurance policy.

¶ 24    When interpreting statutes, "we endeavor to give effect to the intent of the General Assembly." *Colorow Health Care, LLC v. Fischer*, 2018 CO 52M, ¶ 11. To divine that intent, we start by

---

[3] Section 10-4-609(4), C.R.S. 2018, also uses the phrase "legally entitled to collect," when discussing coverage related to an "underinsured motor vehicle." The division in *American Family Mutual Insurance Co. v. Ashour*, 2017 COA 67, ¶ 21 n.2, found "no legally significant difference between the phrase 'legally entitled to recover' and 'legally entitled to collect.'" Shelter's policy uses the phrase, "legally obligated to pay damages," but Shelter does not argue that this language provides less coverage than what is required by section 10-4-609. *See Arline v. Am. Family Mut. Ins. Co.*, 2018 COA 82, ¶ 14 ("[A] term of an insurance policy 'is void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage"' . . . ." (quoting *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 345 (Colo. 1998))).

10

looking to the plain language of the statute, construing words and phrases according to the rules of grammar and common usage. *Roberts v. Bruce*, 2018 CO 58, ¶ 8.

¶ 25    Neither the division in *Borjas* nor that in *Ashour* found the phrase "legally entitled to recover damages from owners or operators of uninsured motor vehicles" to be ambiguous. Still, both divisions interpreted the phrase based on policy considerations. *See Borjas*, 33 P.3d at 1269 ("The contrary line of cases all give a strict interpretation to the statutory language 'legally entitled to recover' that we find inconsistent with the public policy expressed in § 10-4-609."); *see also Ashour*, ¶ 62 ("[W]e choose to adopt the *Borjas* interpretation of that phrase because it is consistent with the policies underlying the UM/UIM statute, the purpose of which is to compensate the injured party 'for injuries received at the hands of one from whom damages cannot be recovered.'" (quoting *Borjas*, 33 P.3d at 1267)).

¶ 26    Neither party argues that section 10-4-609(1)(a) is ambiguous. At least one division of this court has held that it is not. *See Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 746 (Colo. App. 2002) (Referring to "the unambiguous language of the statute itself,"

11

the division explained "[s]ection 10-4-609(1)(a) plainly states that UM/UIM coverage is 'for the protection of persons insured [under the policy] who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.'"). And where the plain language of a statute is unambiguous and does not conflict with other statutory provisions, we should look no further. *People in Interest of W.P.*, 2013 CO 11, ¶ 11.

¶ 27    That said, what does the plain language of this phrase mean?

¶ 28    Starting with the words "legally entitled," because the General Assembly included the word "legally," it must have meant something more than simply "entitled." *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005) ("[W]hen examining a statute's plain language, we give effect to every word and render none superfluous because '[w]e do not presume that the legislature used language "idly and with no intent that meaning should be given to its language."'") (citations omitted).

¶ 29    "Legally" means "[i]n a lawful way; in a manner that accords with the law." Black's Law Dictionary 1032 (10th ed. 2014); *see, e.g., Loncar v. Progressive Cty. Mut. Ins. Co.*, 553 S.W.3d 586, 590

12

(Tex. App. 2018) ("[I]f the insured has no legal right to recover anything from the vehicle's owner or operator, whether because of the motorist's lack of fault, immunity, or some other substantive defense, the insured is not 'legally entitled to recover' any damages against the owner or operator . . . ."); *State Farm Mut. Auto. Ins. Co. v. Hunt*, 856 N.W.2d 633, 638 (Wis. Ct. App. 2014) ("[B]y its terms, the statute mandates underinsured motorist coverage where the insured is legally entitled to obtain damages, by a judgment or other legal process, against the underinsured motorist."). So, any entitlement to damages under section 10-4-609 must be as provided under the law.

¶ 30    Under the morality play of the common law, a person injured by the negligence of another is usually entitled to damages. But the WCA says otherwise, partly in response to the fellow servant rule. *See Williams v. State Farm Mut. Auto. Ins. Co.*, 641 A.2d 783, 787 (Conn. 1994) ("Whether the uninsured motorist was legally liable must be determined in light of any substantive defenses that would have been available to the uninsured motorist."). Through this lens, we take another look at the statutory language.

¶ 31　Section 10-4-609 also uses the word "recover." The definition of this word includes "[t]o obtain (relief) by judgment or other legal process" and "[t]o obtain damages or other relief; to succeed in a lawsuit or other legal proceeding." Black's Law Dictionary 1466; *see Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 503 (Mo. Ct. App. 2010) ("We believe 'recover' and 'recovery' have two meanings as relevant to the arguments here. The first, the plain definition, is to get or obtain something under a claim of right, to collect. The second, narrower, definition is to obtain through legal judgment.").

¶ 32　In short, because of coworker immunity, under either the broader or the narrower definition, Ryser cannot recover from Forster.

¶ 33　Consistent with these definitions, Colorado cases hold that "legally entitled" under section 10-4-609 means entitlement as provided under the law. In *Briggs v. American Family Mutual Insurance Co.*, 833 P.2d 859, 861-62 (Colo. App. 1992), for example, the division explained:

> Under the statute, the insurer must pay to the insured, up to the limit of the policy, whatever losses the insured proves he or she is "legally

14

> entitled to recover" from the uninsured motorist. Thus, the insured has the burden to prove that the uninsured motorist was negligent and the extent of the damages. *This can be done in a judicial proceeding against either the uninsured motorist or the insurer, or in an arbitration proceeding.*

(Emphasis added.) *See State Farm Mut. Auto. Ins. Co. v. Brekke,* 105 P.3d 177, 188 (Colo. 2004) ("However, section 10-4-609's coverage applies only if the insured is 'legally entitled' to damages. Consequently *a finding of no liability or of limited damages* on the part of the uninsured motorist will eliminate or limit a claim under the insurance provider's UM coverage.") (emphasis added); *see also USAA v. Parker,* 200 P.3d 350, 358 (Colo. 2009) ("The language of the UM/UIM statute indicates that its aim is to provide the insured a means to recover from the insurer all of the 'damages' he or she is legally entitled to recover *in an action against the tortfeasor* up to the insured's policy limits.") (emphasis added).

¶ 34   But where WCA immunity protects the tortfeasor, this immunity is "from suit," not just from damages. *See, e.g., Rodriquez v. Nurseries, Inc.,* 815 P.2d 1006, 1008 (Colo. App. 1991) ("As it pertains to the immunity from suit of a complying employer, the exclusivity of the Workers' Compensation Act has been

15

continually reaffirmed . . . .").  Simply put, Ryser cannot bring a "judicial proceeding" or "an action" against Forster, as section 10-4-609 contemplates ("from owners or operators of uninsured motor vehicles").

¶ 35     Still, what about the interpretations in *Borjas* and *Ashour,* which limited the statutory requirement to proving the tortfeasor's "fault," as could easily be done in a case against a UM/UIM insurer?  To be sure, fault is a necessary step.  But under the plain language of section 10-4-609, it is not sufficient.  Because the tortfeasor may have affirmative defenses, merely showing that the tortfeasor was at fault would not establish a legal entitlement to recover from an owner or operator of an uninsured motor vehicle.  And WCA and co-employee immunity are just such defenses.  *Bain v. Town of Avon,* 820 P.2d 1133, 1135 (Colo. App. 1991), *overruled on other grounds by Bertrand v. Bd. of Cty. Comm'rs,* 872 P.2d 223 (Colo. 1994).

¶ 36     Given all of this, how does "legally entitled to recover" apply here?  Forster was both the "operator" of Babion's vehicle under section 10-4-609 as well as an insured under her policy because Forster was driving with Babion's permission.  Likewise, as a

permitted passenger, Ryser was covered by Babion's insurance policy. And he meets the threshold for seeking UM/UIM benefits under her policy because the coworker immunity rule renders the driver uninsured. *See Borjas*, 33 P.3d at 1268 ("Negligent drivers and their employers who are immune from liability . . . may not be financially irresponsible in the sense that they lack the ability to pay, but from the perspective of the injured innocent driver, the lack of legal responsibility has the same effect."); *see also Atl. Mut. Ins. Co. v. Payton*, 682 N.E.2d 1144, 1148 (Ill. App. Ct. 1997) ("A reason that the driver is deemed noninsured is because the Workers' Compensation Act grants immunity from any liability towards a co-employee.").

¶ 37    Even so, these undisputed facts only get Ryser so far. "Uninsured motorist coverage is not triggered unless an insured [Ryser] is legally entitled to recover damages from the [owner or] operator of an uninsured automobile [Forster]." *Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 814 (Colo. App. 2006). In other words, under the plain language of section 10-4-609, Ryser is not entitled to UM/UIM benefits because he is not "legally entitled to recover damages" from Forster by virtue of the co-employee immunity rule.

17

¶ 38    To Ryser, this outcome seems simplistic and even harsh. But it reflects the dominant view. *See generally* 2A A. Larson, *Workmen's Compensation Law* § 71.23(j) (1983 & Supp. 1987) ("Ordinarily, for the uninsured motorist clause to operate in the first place, the uninsured third person must be legally subject to liability . . . . [I]f the third person is specifically made immune to tort suit by the compensation act's exclusive remedy clause, the uninsured motorist provision does not come into play."); John P. Ludington, Annotation, *Automobile Uninsured Motorist Coverage: "Legally Entitled to Recover" Clause as Barring Claim Compensable Under Workers' Compensation Statute*, 82 A.L.R.4th 1096 (1990) (Where "the uninsured motorist coverage has been bought and paid for by someone other than the injured employee, *the results have been uniform.*") (emphasis added).[4]

---

[4] Numerous cases are in accord, holding that "where the plaintiff cannot maintain a claim against the [tortfeasor] due to the application of the co-employee rule, the plaintiff is not 'legally entitled to recover' under the uninsured motorist provision." *Kobak v. Sobhani*, 2011-Ohio-13, ¶ 33 (citation omitted); *see, e.g., Medders v. U.S. Fid. & Guar. Co.*, 623 So. 2d 979, 989 (Miss. 1993) ("[T]he clear meaning of the phrase *legally entitled to recover* . . . limits the scope of the coverage mandated by the statute to those instances in which the insured would be entitled at the time of injury to recover

¶ 39    We consider these authorities persuasive and follow them

here.  As one court explained, "[t]he phrase 'legally entitled to

recover' cannot be stretched so far as to cover situations when an

insured could have never recovered from the uninsured motorist

because the law did not provide for any recovery."  *Otterberg v. Farm*

*Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 30 (Iowa 2005) (interpreting

"legally entitled to recover" to require "not only that the insured

'suffered damages caused by the fault of the uninsured motorist,'

but also that the insured's action against the uninsured motorist

was not barred under substantive law") (citation omitted).

¶ 40    Nor is this outcome clouded by cases allowing recovery of

UM/UIM benefits from an employer's insurer where the employee

was injured by a third-party tortfeasor, who does not enjoy

---

through legal action."); *Cormier v. Nat'l Farmers Union Prop. & Cas. Co.*, 445 N.W.2d 644, 647 (N.D. 1989) ("[T]he clear meaning of the language, 'legally entitled to recover,' imports a condition precedent to the uninsured motorist insurer's obligation that the insured have a legally enforceable right to recover damages from the owner or operator of the uninsured motor vehicle."); *Aetna Cas. & Sur. Co. v. Dodson*, 367 S.E.2d 505, 508 (Va. 1988) ("The phrase 'legally entitled to recover as damages' interposes, as a condition precedent . . . , the requirement that the insured have a legally enforceable right to recover damages from an owner or operator of an uninsured motor vehicle.").

19

immunity. *See McMichael*, 906 P.2d at 94. After all, the linchpin of these cases is the tortfeasor's lack of immunity. *See William v. City of Newport News*, 397 S.E.2d 813, 816 (Va. 1990) (employee injured in the course and scope of employment was entitled to UM/UIM benefits "where the injury was inflicted by someone other than a fellow-employee — a stranger to the business"); *Henry v. Benyo*, 506 S.E.2d 615, 621 (W. Va. 1998) (because a plaintiff "has an undisputed statutory right to seek recovery from . . . the third-party tortfeasor chargeable with the motor vehicle accident," the plaintiff is legally entitled to recover UM/UIM benefits under his or her employer's policy). But tortfeasor immunity is alive and well here.

¶ 41    Despite all of this, Ryser points to cases where recovery of UM/UIM benefits is allowed even though the injured party cannot obtain an enforceable judgment against the tortfeasor. Examples include unidentified hit-and-run drivers, *see Farmers Ins. Exch. v. McDermott*, 34 Colo. App. 305, 308-09, 527 P.2d 918, 920 (1974), and bankrupt tortfeasors, *see Wilkinson v. Vigilant Ins. Co.*, 224 S.E.2d 167 (1976). This argument misses the mark because the test for UM/UIM benefits is not whether an enforceable judgment

has been obtained — it is whether the injured plaintiff is legally entitled to recover damages from the tortfeasor.

¶ 42    In *McDermott,* the court explained "[t]here can be no doubt as to the liability of the errant driver here, had his identity been known." 34 Colo. App. at 308, 527 P.2d at 920. Similarly, cases involving bankrupt tortfeasors explain "there is nothing preventing [the injured plaintiff] from establishing that he is legally entitled to recover from [the tortfeasor] on the merits of his claims; instead, [the plaintiff] is merely barred, by operation of [the tortfeasor's] bankruptcy discharge, from actually collecting demonstrated damages from her." *Easterling v. Progressive Specialty Ins. Co.,* 251 So. 3d 767, 775 (Ala. 2017). Again, neither of these examples involves a tortfeasor who is immune from liability.

¶ 43    Not easily deterred, Ryser also cites to *Torres v. Kansas City Fire & Marine Insurance Co.,* 849 P.2d 407, 410 (Okla. 1993), where an employee injured by a coworker received UM/UIM benefits under their employer's policy. The court held, like the *Ashour* division, that the phrase "legally entitled to recover" requires only that "the insured must be able to establish fault on the part of the uninsured

motorist which gives rise to damages and prove the extent of those damages." *Torres*, 849 P.2d at 410.

¶ 44    But Colorado cases have not extended the "establish fault" rationale this far. Both *Ashour* and *Borjas* involved claimants who sought to recover UM/UIM benefits under their own insurance policies. *Ashour*, ¶ 56; *Borjas*, 33 P.3d at 1266. The *Ashour* division explained: "In our view, the fact that Ashour sought recovery of benefits under his own insurance policy is critical . . . . Ashour did not seek to recover additional damages from the immune parties in this case — his employer and co-employee." *Ashour*, ¶ 52; *see Dickinson*, 179 P.3d at 208 ("[W]e acknowledge that the statutory policies which we have reconciled may interact differently if a claimant . . . sought UM/UIM benefits from the claimant's own insurance carrier . . . ."). And Ryser has already received UM/UIM benefits under his own policy.[5] He got what he paid for.

_____

[5] We leave for another division or our supreme court to decide whether our interpretation of "legally entitled to recover" would foreclose future claims like those in *Borjas* and *Ashour*. *See Matarese v. N.H. Mun. Ass'n Prop. Liab. Ins. Tr., Inc.*, 791 A.2d 175, 182 (N.H. 2002) ("New Hampshire's uninsured motorist statute is

¶ 45    Ryser's remaining arguments examine policy considerations related to the WCA and UM/UIM coverage.  We decline to follow him down this path because "[p]olicy does not justify disregarding the plain language of [a statute]."  *Krol v. CF & I Steel*, 2013 COA 32, ¶ 28 n.6; *see Braata, Inc. v. Oneida Cold Storage Co., LLP*, 251 P.3d 584, 587 (Colo. App. 2010) ("[A]lthough Colorado has a strong public policy favoring arbitration, that policy does not trump statutory plain language."); *Bontrager v. La Plata Elec. Ass'n*, 68 P.3d 555, 561 (Colo. App. 2003) ("We need not address plaintiff's public policy arguments because we view the relevant Colorado statutes as unambiguous . . . .").

## V.  Conclusion

¶ 46    We conclude that the trial court properly granted summary judgment in favor of Shelter on Ryser's claim for UM/UIM benefits. Having so concluded, we need not address Shelter's alternative

---

designed to compensate people injured in automobile accidents whose losses would otherwise be uncompensated because the tortfeasor lacked liability coverage or because the tortfeasor's identity was unknown.  The underlying purpose of the statute is to provide coverage only where there is a lack of liability insurance on the part of the tortfeasor and the tortfeasor would be legally liable to the injured driver in a tort action; it does not provide coverage in all situations that might go uncompensated.") (citation omitted).

argument based on the "described auto" exclusion in Babion's policy.

¶ 47     The judgment is affirmed.

JUDGE FURMAN and JUDGE MÁRQUEZ concur.